## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STACIE LYN WELLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-20-363-SPS |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Stacie Lyn Weller requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-four years old at the time of the administrative hearing (Tr. 44).  She has earned her GED, and has no past relevant work (Tr. 21, 281).  The claimant alleges she has been unable to work since May 15, 2015, due to osteoarthritis, bipolar disorder, severe anxiety, lumbar spondylosis, chronic pain syndrome, post-thyroid removal, gout, and heart problems (Tr. 280).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on September 5, 2018.  Her applications were denied.  ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated March 27, 2020 (Tr. 10-23).  The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as

defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i. e.*, she can lift/carry ten pounds occasionally and up to ten pounds frequently, stand/walk at least two hours in an eight-hour workday, and sit at least six hours in an eight-hour workday, but that she should avoid a workplace with loud noise, and should not have to talk with the public or on the phone as part of work. Additionally, he found she could perform simple, repetitive tasks, could only occasionally interact with supervisors and co-workers, and she should not work with the public (Tr. 15). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, clerical sorter and filler (Tr. 21-22).

## Review

The claimant contends that the ALJ erred by: (i) failing to find she had additional severe impairments, including chronic pain, intermittent palpitations, and trigger finger; (ii) improperly assessing her RFC ; and (iii) improperly identifying the jobs she could perform at step five. As to her second contention, the claimant asserts that the ALJ failed to account for additional limitations related to her nonsevere impairments, discounted the opinion of consultative examiner, Dr. Theresa Horton when she stated the claimant would not adjust well to fast-paced tasks, and failed to account for her moderate limitations related to concentration, persistence, and pace. The Court finds these contentions unpersuasive for the following reasons, and the decision of the Commissioner should be affirmed.

The ALJ determined that the claimant had the severe impairments of chronic kidney disease, degenerative disc disease, degenerative joint disease, gout, obstructive sleep apnea, bilateral hearing loss, obesity, major depressive disorder, generalized anxiety

disorder, and bipolar disorder, as well as the nonsevere impairments of status post thyroidectomy, hypertension, and trigger finger (Tr. 13).   Additionally, he noted the claimant underwent a thyroidectomy and experienced trigger finger prior to the alleged onset date, but that she alleged no related impairments at the administrative hearing.   He also acknowledged the claimant occasionally had elevated blood pressure but that cardiovascular imaging was largely within normal limits (Tr. 13).

Prior to her May 15, 2015 alleged onset date, a 2013 evaluation conducted by the Oklahoma Department of Rehabilitation Services indicated that the claimant had functional limitations to employment in the areas of receptive communication, maintaining relationships, understanding consequences of behavior, working independently, completing tasks, and maintaining concentration and attention (Tr. 393).   Additional evaluations that same year did confirm that the claimant had sensorineural hearing loss in both ears, and she was prescribed hearing aids (Tr. 406).   The claimant was assessed with sleep apnea on February 12, 2015 (Tr. 491-492).

On July 21, 2015, Dr. Azhar Shakeel, M.D., conducted a physical examination of the claimant (Tr. 370-378).   He noted that she had some limitations of range of movement of the back with pain, but the "Hand/Wrist Worksheet" indicated that the claimant was within normal limits, that she could effectively oppose the thumb to the fingertips, manipulate small objects, and effectively grasp tools such as a hammer (Tr. 370-373, 377-378).   His assessment indicated that the claimant had back pain with range of motion and weak heel/toe walking, but that her exam was otherwise normal (Tr. 378).

On August 26, 2015, Dr. Susan Linde, Ph.D., conducted a mental status examination of the claimant (Tr. 380-386).  She assessed the claimant with depressive disorder NOS, as well as panic disorder with agoraphobia (Tr. 386).  Dr. Linde found that the claimant's attention and concentration were intact, but that she had impaired immediate and delayed recall (Tr. 383-384).  She noted that, overall, the claimant evidenced some impairment in her memory skills, and found that she was likely able to perform some basic work-related mental activities including the ability to understand and sustain concentration, but that she likely had limitations related to remembering, persisting when tasks are difficult, socially interacting, and adapting to the demands of work (Tr. 385).  She gave the claimant a guarded prognosis, noting the claimant was not consistent in following doctors' recommendations (Tr. 385).

The relevant medical evidence reflects that the claimant largely received regular treatment through Muskogee Family Care.  Treatment notes reflect one report of trigger finger on the right hand on May 1, 2017 (Tr. 437).  She returned seven days later requesting a letter stating that she cannot stand for six hours due to heel pain, gout, obesity, and a right heel spur, but made no mention of her trigger finger at that time or thereafter (Tr. 436).  She returned in September 2017 for treatment of left knee pain (Tr. 435).

In January 2018, the claimant reported chest pain and a rapid heart rate/intermittent palpitations that began in December 2017, and was given a Holter monitor to wear (Tr. 648).  On February 21, 2018, she reported no current chest pain or palpitations (Tr. 652).  Following the Holter monitor, treatment notes indicate that most of her symptoms were not associated with arrhythmias during the thirty-day event monitor (Tr. 592).

February 2018 x-rays showed mild bilateral hip osteoarthritis (Tr. 614, 624).  The claimant received pain management treatment through Access Pain Solutions, where March 2018 treatment notes reflect she was generally normal, albeit overweight and anxious, with a mildly antalgic abnormal gait and low back pain with decreased range of motion (Tr. 613-614).  Following continued complaints of pain, the claimant received facet diagnostic injections in the lumbar spine, and she reported those helped some although she still had muscle soreness (Tr. 631, 635-636).  In November 2018, the claimant was assessed with stage three kidney disease secondary to chronic use of NSAIDs, morbid obesity, gout, and ischemic nephropathy from tobacco abuse (Tr. 702, 791).  However, a bilateral renal sonography with renal artery Doppler evaluation was normal aside from a partially distended bladder (Tr. 741-742).

In May 2018, the claimant began receiving mental health treatment from Oklahoma Families First, Inc., where she was diagnosed with generalized anxiety disorder, major depressive disorder (recurrent, moderate), and bipolar II disorder (Tr. 537-538, 565).  On January 8, 2019, Dr. Theresa Horton, Ph.D. conducted a diagnostic interview and mental status examination of the claimant (Tr. 803-808).  Dr. Horton assessed the claimant with bipolar type II, most recent mood depressed, with anxious distress (Tr. 806).  Her examination notes reflect the claimant was predominantly anxious and depressed, and her prognosis was that the claimant appeared to understand complex concepts, but performed best with those instructions and tasks that were simple and somewhat more complex.  Additionally, Dr. Horton noted the claimant had deficits in communication related to her hearing loss, and that the necessity of repeated questions and statements interfered with

pace.  She thus concluded that the claimant "likely does not adjust well in areas that are fast paced and/or densely populated" (Tr. 806).

In July 2019, the claimant was not a candidate for cochlear implants under Medicare guidelines, but her providers were seeking other funding avenues and they recommended new hearing aid technology be tried first before continuing with cochlear implantation (Tr. 814-816).   A December 2019 x-ray of the left knee revealed only mild degenerative changes (Tr. 914).  By the end of 2019 through 2020, the claimant continued to complain of back pain, but reported no chest pain, shortness of breath, or palpitations (Tr. 837, 907). She also walked with a normal gait (Tr. 838, 907).

State reviewing physicians determined initially and upon review that the claimant could perform light work, but that she had hearing limitations related to noise and hazards (Tr. 94-96; 117-120).  As to her mental impairments, physicians determined both initially and upon reconsideration that the claimant could perform simple and some detailed tasks, relate to others on a superficial work basis, and adapt to a work environment (Tr. 98-99, 122).

In his written opinion at step four, the ALJ summarized the claimant's administrative hearing testimony, as well as the medical evidence of record.  As relevant to this appeal, the ALJ noted the findings from Dr. Shakeel's consultative exam, including normal gross and fine tactile manipulation (Tr. 16).   He also noted the physical examinations showing decreased strength and range of motion, as well as the exam where the claimant had a normal gait (Tr. 17).  He specifically pointed to the objective testing related to sleep apnea, audiology, abnormal uric acid levels related to gout flares, and x-

rays (Tr. 17-18).  He also summarized both Dr. Linde's and Dr. Horton's reports, finding Dr. Linde's opinion not persuasive because she gave no specific vocationally defined limitations and her report was therefore too vague to provide an RFC.  However, he did find her exam supported some limitations related to her mental impairments, though not to the extent alleged by the claimant.  He summarized Dr. Horton's entire "Prognosis," finding the opinion persuasive, as it was supported by her qualifications as an expert in the field of mental health, and consistent with her objective findings which were "largely normal but for depressed or anxious mood with decreased speech and pace due to hearing problems" (Tr. 19).

The claimant first asserts that the ALJ erred by failing to find her trigger finger, chronic pain, and intermittent heart palpitations were severe impairments.  Assuming *arguendo* that this *was* error by the ALJ, such error was nevertheless harmless because the ALJ *did find* the claimant had numerous severe impairments, which obligated the ALJ to then consider *all* of the claimant's impairments (severe or otherwise) in subsequent stages of the sequential evaluation, including the step four assessment of the claimant's RFC.  *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. . . . [T]he ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted].

The claimant next contends that the ALJ erred at step four in assessing her RFC by failing to consider, much less provide, limitations related to trigger finger, chronic pain, and symptoms resulting from her intermittent palpitations and in evaluating Dr. Horton's opinion where she stated the claimant would not adjust well to fast-paced tasks. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7. Here, the ALJ has fulfilled his duty. The claimant nevertheless asserts that the evidence does not support a finding that she can perform work at the assigned RFC level in light of her impairments.

Contrary to the claimant's arguments, however, the ALJ discussed all the evidence in the record and his reasons for reaching the RFC. *Hill*, 289 Fed. Appx. at 293 ("The ALJ

provided an extensive discussion of the medical record and the testimony in support of his RFC finding.  We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).  The evidence does not reflect a limitation related to the claimant's trigger finger from any medical source, and the ALJ clearly considered it when he pointed to physical examinations where her tactile manipulation and finger-to-thumb opposition were normal and adequate.  Likewise, the claimant has pointed to no medical documentation providing further limitations to her pain levels or heart palpitations other than her own reports, and the ALJ specifically noted that cardiovascular imaging was largely normal.  Because she points to no evidence other than her own assertions, the Court declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

The claimant further asserts that the ALJ erred because he found that she had moderate limitations in concentration, persistence, and pace at step three, but provided no related limitations at step four.   Here, the ALJ reviewed the mental status examinations in the record and discussed the evidence related to her mental impairments, concluding that she could perform, *inter alia*, simple, repetitive tasks (Tr. 15-21).  The Tenth Circuit has stated that an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."  *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).

Although "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations," *id.*, at 1204, the Court finds here that the RFC limitations adequately accounted for her moderate limitations when he limited her to simple, repetitive tasks (Tr. 15). *See Nelson v. Colvin*, 655 Fed. Appx. 626, 629 (10th Cir. 2016) ("Unskilled work does not require ... the ability to maintain attention and concentration for extended periods, an area in which Dr. Tabor noted a moderate limitation."). *See also Bales v. Colvin*, 576 Fed. Appx. 792, 798 (10th Cir. 2014) ("[W]e conclude that the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case.").

The Court turns next to the ALJ's assessment of Dr. Horton's opinion. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our

disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered, but the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Court finds here that the ALJ's treatment of Dr. Horton's opinion was appropriate. He noted Dr. Horton's statements and specifically found them persuasive, then *further limited* her RFC to simple, repetitive tasks, as well as limiting her interaction to occasional with supervisors and co-workers, and never with the general public. And while she stated the claimant "likely" would not adjust well to fast-paced areas, there is no evidence that the jobs identified are fast paced, *i. e.*, assembly line or requiring a specific pace. *See* DICOT §§ 209.587-010, 731.685-014. Thus, the ALJ's opinion was sufficiently clear for the Court to determine the weight he gave to the opinion, as well as sufficient reasons for the weight assigned, and any error to specifically address the statement regarding pace is harmless here. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."). The Court thus finds that

-13-

the ALJ properly considered Dr. Horton's opinion, along with all the other opinions in the record in concert with the medical evidence in accordance with the proper standards.

In this case, the ALJ noted and fully discussed the findings of all of the claimant's various treating, consultative, and reviewing physicians, including the records related to the claimant's nonsevere impairments.  The Court finds that when all the evidence is taken into account, the conclusion that the claimant could perform sedentary work with the aforementioned limitations is well supported by substantial evidence.  The Court thus finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC.  *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

Finally, the claimant asserts that the ALJ's failure to consider the additional limitations as discussed above resulted in an error in the identification of jobs she can perform at step five.  Additionally, she contends that the ALJ erred in identifying jobs she could perform, because there was a conflict between the information provided and the Dictionary of Occupational Titles ("DOT").  Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.  The [ALJ] will explain in the determination or decision how he or she resolved the conflict.  The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added].  Although the VE did not identify

-14-

any conflict between her testimony and the DOT, the claimant contends there is a conflict with regard to the reasoning levels of each of the jobs identified.  *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

The two jobs the ALJ identified, clerical sorter and filler, have reasoning levels of 2.  *See* DICOT §§ 209.587-010, 731.685-014.  A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations."  *See* DICOT §§ 209.587-010, 731.685-014.  The claimant asserts that this reasoning level is incompatible with simple, repetitive tasks.  The Court agrees with the Commissioner, however, that a reasoning level of two *is consistent* with performing simple, repetitive tasks, although a reasoning level of three is not, and that other courts have reached the same conclusion.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree.").  *See also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2].");  *Goleman v.*

-15-

*Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two."). The Court thus finds no error here.

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard*, 379 F.3d at 949). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citations omitted). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 24th day of March, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**